UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONISHA IVEY,
o/b/o Da'Moni Ivey,

        Plaintiff,

  v.

SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civil Action No. 10-0656 (BAH)

**MEMORANDUM OPINION**

Plaintiff, proceeding *pro se*, seeks review of a final decision of the Commissioner of Social Security ("SSA") denying her daughter Child's Supplemental Security Income ("SSI") disability benefits. Plaintiff has written eloquently about the challenges of caring for her daughter who suffers from a chronic liver condition, and the progress her daughter has been made since her condition was first diagnosed in infancy. Now before the Court are plaintiff's motion for judgment of reversal [Dkt. #22] and defendant's motion for judgment of affirmance [Dkt. #23]. For the reasons discussed below, the Court will deny the former and grant the latter.

    I.  BACKGROUND

Da'Moni J. Ivey ("Da'Moni") was born on June 1, 2003, with biliary atresia. Admin. R. at 90 (Application Summary for Supplemental Security Income at 1), 393 (Letter from Dr. Parvathi Mohan dated October 9, 2009).[1] The condition involves "obliteration or hypoplasia of one or more components of the bile ducts due to arrested fetal development, resulting in

---

[1] The Administrative Record ("Admin. R.") is comprised of 393 sequentially-numbered pages in 13 separate docket entries [Dkt. #8-20].

persistent jaundice and liver damage ranging from biliary stasis to biliary cirrhosis, which splenomegaly as portal hypertension progresses." Def.'s Mem. in Supp. of his Mot. for J. of Affirmance and his Mem. in Opp'n to Pl.'s Mot. for J. of Reversal ("Def.'s Mem.") at 2 (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 156 (28th ed. 1994)).  In addition to biliary atresia, Da'Moni had a history of "various gastrointestinal dysfunctions such as H. pylori gastritis and episodic vomiting associated with abdominal pain."  Admin. R. at 392 (Letter from Carola Cerezo-Allen, RN, dated October 8, 2009).  At six weeks of age, Da'Moni successfully underwent a surgical procedure known as "Kasai portoenterostomy to remove a blockage in her liver."  Admin. R. at 13 (Decision dated November 16, 2009 at 4).

Da'Moni has been treated since birth by Parvathi Mohan, M.D., Admin. R. at 393 (Letter from Dr. Mohan dated October 9, 2009), and it was believed that certain of her symptoms, which include vomiting, diarrhea, dehydration and abdominal pain, may have involved her liver.  There were "no complaints of abdominal pain, fever, vomiting, or diarrhea" during a visit to Dr. Mohan on November 3, 2006, however.  Admin. R. at 13.  Similarly, as of a follow-up in April 2007, notwithstanding bouts of abdominal pain, Da'Moni had "virtually no symptoms" and exhibited no signs of jaundice.  Admin. R. at 192 (Clinic Letter dated April 20, 2007).  She was "doing extremely well from the biliary artresia point of view," and she continued to take vitamins and other medications.  *Id.*  Da'Moni experienced intermittent abdominal pain and diarrhea in the weeks preceding a visit to Dr. Mohan in July 2007, but both conditions had resolved themselves, and the doctor observed neither jaundice nor indications of a cirrhotic or fibrotic liver at that time.  Admin. R. at 175 (Clinic Letter dated July 6, 2007).  Rather, "from the liver point of view [Da'Moni was] doing great and has done very well" since the Kasai portoenterostomy.  *Id.*  Although "[t]here had been some concerns initially that [Da'Moni] may require a transplant, . . .

she [was] showing more and more improvement in her liver functions as well as on clinical examination." *Id.* Da'Moni experienced no apparent weight loss and showed "more and more improvement in her liver functions." Admin. R. at 13.

On December 26, 2007, when Da'Moni was four years old, plaintiff applied for SSI benefits on Da'Moni's behalf. Admin. R. at 90 (Application Summary for Supplemental Security Income at 1). Plaintiff claimed that Da'Moni's disability, categorized as "other disorders of gastrointestinal system," Admin. R. at 57 (Disability Determination and Transmittal dated February 6, 2008), began on July 7, 2003. Admin. R. at 90.

In the months following the SSI application, Da'Moni continued to show improvement. Fizzeh Nelson-Desiderio, M.D., evaluated the case and determined that Da'Moni "has responded to surgery and [was] doing well." Admin. R. at 257 (Childhood Disability Evaluation Form dated February 5, 2008 at 1). SSA denied the SSI application initially. *See* Admin. R. at 59-61 (Notice dated February 7, 2008). In relevant part, SSA's notice stated:

> The medical evidence shows although [Da'Moni] does have a problem with her liver there have been no complications following her surgery which would keep her from functioning. The medical evidence shows the surgery was successful and [she] is able to maintain adequate nutrition. There are no other impairments which would keep [Da'Moni] from functioning satisfactorily.

Admin. R. at 59 (Notice dated February 7, 2008 at 1).

Following the denial of plaintiff's SSI application, Da'Moni's condition remained stable. Specifically, on February 15, 2008, Dr. Mohan reported that Da'Moni's liver function was normal and she exhibited neither jaundice nor anemia. Admin. R. at 324 (Clinic Letter dated February 15, 2008). She underwent an endoscopy on March 17, 2008, "to look for possible causes of abdominal pain such as gastritis and allergic colitis as well as to rule out presence of varices in the [gastrointestinal] tract." Admin. R. at 332 (Operative Report). No sign of "active

3

H. Pylori gastritis" or esophageal varices were observed. Admin. R. at 340 (Gastroenterology Clinic Letter dated October 3, 2008). The results of the endoscopy were "essentially normal." Admin. R. at 350 (Gastroenterology Clinic Letter dated December 12, 2008). Da'Moni was described as "a bright young girl who was in good health" and who was "stable from the biliary atresia point of view," even though she had "occasional abdominal pain which may be related to a nonspecific gastritis or reflux." Admin. R. at 341. In December 2008, Da'Moni was showing "no signs of any liver decompensation." Admin. R. at 350 (Gastroenterology Clinic Letter dated December 12, 2008). At that time Dr. Mohan believed that she would "remain stable without requiring a listing for a liver transplant for a very long time." Admin. R. at 351.

Plaintiff sought reconsideration of the initial denial of the SSI application. Admin. R. at 65-67 (Notice of Reconsideration dated April 28, 2008). Esther Pinder, M.D., concurred with Dr. Nelson-Desiderio's assessment, finding Da'Moni's "condition stable." Admin. R. at 317 (Childhood Disability Evaluation Form dated April 28, 2008 at 1). Dr. Pinder found that Da'Moni's "biliary atresia has been treated [and] her condition [then was] not severe," and she showed "no evidence of liver failure." Admin. R. at 322 (Childhood Disability Evaluation Form dated April 28, 2008 at 6). Following an "independent[] review[] by a physician and disability specialist," Admin. R. at 65 (Notice of Reconsideration dated April 28, 2008 at 1), SSA again found that Da'Moni was not eligible for SSI benefits. "The medical evidence show[ed] that despite the medical condition, [Da'moni was] being effectively treated," and her condition did not "cause marked and severe functional limitations." Admin. R. at 65-66 (Notice of Reconsideration dated April 28, 2008 at 1-2). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Admin. R. at 69 (Request for Hearing by Administrative Law Judge dated May 16, 2008).

Da'Moni again reported abdominal pain and vomiting in early 2009, and Dr. Mohan's "[r]eview of systems was otherwise normal except for the abdominal pain and spit up." Admin. R. at 359 (Gastroenterology Clinic Letter dated March 20, 2009). She was "not in any distress," and examination of her abdomen "was significant for hepatomegaly, which was hard consistent with a biliary atresia sequelae." *Id.*

Dr. Mohan provided a statement in support of the SSI application which in relevant part stated:

> Since [the Kasai procedure, Da'Moni] has continued to have evidence for chronic liver disease with inflammation and scarring and I see her in my office one every 3-4 months. I also check her labs routinely to make sure that her liver disease is not worsening. She is on special medications for her condition. However, this condition can progress and occasionally lead to a liver transplantation. At the moment, patient is stable but requires restrictions in physical activity and a close monitoring of nutrition and medications.

Admin. R. at 393 (Letter from Dr. Mohan dated October 9, 2009). Da'Moni's "liver functions [should be followed] carefully since some of these children can decompensate after a period of relative stability." Admin. R. at 392 (Letter from C. Cerezo-Allen, RN, dated October 8, 2009). At that time, however, Da'Moni was "developmentally . . . a normal child" notwithstanding her "history of biliary atresia status post Kasai portoenterostomy and various gastrointestinal dysfunctions." *Id.*

An ALJ conducted a hearing on October 19, 2009, *see* Admin. R. at 24-54 (Transcript of Oral Hearing), at which the plaintiff and Da'Moni were present and plaintiff testified. The ALJ ultimately determined that Da'Moni was not disabled and, therefore, was not entitled to SSI benefits. *See* Admin. R. at 10-23 (Decision dated November 16, 2009).

Arguing that the ALJ's decision is supported by substantial evidence in the administrative record, defendant moves for a judgment of affirmance. *See generally* Def.'s Mem. at 8-10. Plaintiff moves for judgment of reversal, arguing that Da'Moni is disabled because she experiences "moderate, acute, and severe stomach pain" which renders her unable to "do things during these occurrences like [going to] school or caring for herself." Mot. for J. of Reversal ("Pl.'s Mot.") at 2 (page numbers designated by plaintiff).

## II. DISCUSSION

### A. *Standard of Review*

Plaintiff brings this action under 42 U.S.C. § 405(g), which gives the federal district courts jurisdiction over civil cases that challenge a final decision of the Commissioner of Social Security. This statute in relevant part provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.
>
> * * *
>
> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered . . . which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation . . ., the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g). The reviewing court must uphold the decision of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal

6

standards. *Id.*; *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004); *see also Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987); *Simms v. Harris,* 662 F.2d 774, 777 (D.C. Cir. 1980) (per curiam) ("Having found that substantial evidence supports the findings of the Secretary, our review of this case can go no further. Congress has mandated that findings supported by substantial evidence are conclusive upon us. The conclusive findings in this case require our affirmance of the district court, which had likewise affirmed the decision of the Secretary."). Substantial evidence "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Butler*, 353 F.3d at 999 (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003)); *see also Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court does not review the decision *de novo*. *Davis v. Heckler,* 566 F. Supp. 1193, 1195 (D.D.C. 1983). Although the reviewing court "must carefully scrutinize the entire record," its role "is not to determine . . . whether [the claimant] is disabled," but only to assess "whether the ALJ's findings that she is not is based on substantial evidence and a correct application of the law." *Butler*, 353 F.3d at 999; *see also Davis*, 862 F. Supp. at 4.

### B. Childhood Disability Determination Standard

"An individual under the age of 18 shall be considered disabled . . . if [she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.906. An impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the individual's] statement of symptoms," 20 C.F.R. § 416.908, and it meets the "duration requirement" if has

7

lasted or is expected to last "for a continuous period of at least 12 months," 20 C.F.R. § 416.909. A child's impairment is disabling if it "causes marked and severe functional limitations," 20 C.F.R. § 416.911(b), meaning that it meets or is medically or functionally equal to criteria in the Listing of Impairments ("the listings") set forth in appendix 1 of subpart P of part 404 of the regulations. The listings describe "for each of the major body systems impairments that [are] considered . . . severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience. For children, [the listings] describe[] impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925(a).

*C. The ALJ's Decision is Supported by Substantial Evidence and is Free of Legal Error*

There is a three-step process for evaluating a child's disability, *see* 20 C.F.R. § 416.924(a), which in this case results in a finding that Da'Moni is not disabled.

1. Da'Moni Was Not Engaged in Substantial Gainful Activity

First, SSA determines whether the child is doing substantial gainful activity. 20 C.F.R. § 416.924(a). The term "substantial work activity" means "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" is done "for pay or profit," or is "the kind of work usually done for pay or profit, whether or not profit is realized." 20 C.F.R. § 416.972(b). If a child is working and the work is "substantial gainful activity, [SSA]will find that [she is] not disabled regardless of [her] medical condition or age, education, or work experience." 20 C.F.R. § 415.924(b).

At the time plaintiff submitted the SSI application on Da'Moni's behalf, Da'Moni was four years old; at the time of the hearing she was six years old and attended school. *See* Admin. R. at 26-30 (transcript). The ALJ correctly concluded that Da'Moni was not engaged in substantial gainful activity since the filing of the SSI application. Admin. R. at 13.

8

### 2. Da'Moni Has a Severe Physical Impairment

If the child is not engaged in substantial gainful activity, SSA considers the child's physical impairment and determines whether it is severe. See 20 C.F.R. § 415.924(b). If the child has no impairment or if of the impairment "is a slight abnormality . . . that causes no more than minimal functional limitations," 20 C.F.R. § 416.924(c), she is not disabled.

The ALJ's review of medical evidence revealed that Da'Moni was born with biliary atresia which had been corrected surgically. *See* Admin. R. at 13. Dr. Mohan, the Director of Hepatology at Children's National Medical Center, reported continued improvement of her condition from November 2006 through October 2008. Admin. R. at 13-14. Da'Moni suffered occasional bouts of abdominal pain and vomiting, however. Admin. R. at 14. Da'Moni's condition was chronic, requiring constant monitoring of nutrition and medications and imposing limitations on physical activity. Admin. R. at 14. Accordingly, after having weighed the opinions of Da'Moni's treating physicians as well as the consultants who evaluated her case on behalf of the SSA, the ALJ correctly determined that her "liver disease is 'severe' within the meaning of the regulations." Admin. R. at 14.

### 3. Da'Moni's Impairment Neither Meets Nor Is Equivalent To a Listed Impairment

Once a claimant is found to have a severe impairment, SSA determines whether the impairment "meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(d). If the impairment meets or medically or functionally equals the listings, and if the impairment meets the duration requirement, the claimant is considered disabled. 20 C.F.R. § 416.924(d)(1).

(a) Medical Equivalence

An impairment "is medically equivalent to a listed impairment in appendix 1 of subpart P of part 404 of this chapter if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

Plaintiff posits that Da'Moni's condition "may equal the severity requirements of section 105.05 [of the listings], chronic liver disease, . . . with a diagnosis of extrahepatic biliary atresia." Admin. R. at 15; *see* 20 C.F.R. pt. 404, subpart P, app. 1, sec. 105.05H.[2] The ALJ determined that:

> Extrahepatic biliary atresia generally presents in the first two months of life with persistent jaundice. It is usually treated by portoenterostomy. Chronic liver disease is characterized by liver cell necrosis, inflammation, or scarring that persists for more than six months. Significant loss of liver function may be manifested by hemorrhage from varices or portal hypertensive gastropathy, ascites, hydrothorax, or encephalopathy. Symptoms may include pruritis, fatigue, nausea, loss of appetite, or sleep disturbances. There may be developmental delays. Signs may include jaundice, liver or spleen enlargement, or chronic hepatitis. In the absence of evidence of a chronic impairment, episodes of acute liver disease do not meet section 105.05.

Admin. R. at 15. Based on Dr. Mohan's report that Da'Moni's condition was stable, even though she required "some restriction of physical activity and close monitoring of nutrition and medications," the ALJ found that her condition did not meet the required level of medical severity. Admin. R. at 15. Indeed, the plaintiff acknowledged that Da'Moni neither had jaundice nor needed a liver transplant after the surgery, and that her "weight/growth [were] also stable." Pl.'s Mot. at 1.

---

[2] Section 105.00 of the listings pertains to the digestive system. Generally, digestive disorders include liver dysfunction, and biliary atresia is an example of chronic liver disease. *See* 20 C.F.R. pt. 404, subpart P, app. 1, sec. 105.00A, D.

(b)  Functional Equivalence

If an impairment "does not meet or medically equal any listing, [SSA] will decide whether it results in limitations that functionally equal the listings."  20 C.F.R. § 416.926a(a); *see* 20 C.F.R. § 416.924a(b)(1).  The term "functionally equal the listings" means that the impairment "must be of listing-level severity," *id.*, that is, "'marked' limitations in two domains of functions or an 'extreme' limitation in one domain."  20 C.F.R. § 416.425(b)(2)(ii); *see* 20 C.F.R. § 416.926a(d).  A "marked" limitation is "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a(e)(2).  An "extreme" limitation "very seriously interferes with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).  When the claimant is a child, SSA "look[s] at whether [she does] the things that other children [her] age typically do or whether [she has] limitations and restrictions because of [her] medically determinable impairment[]."  20 C.F.R. § 416.924a(b)(3)(i).  In addition, SSA looks at "how well [the child does] the activities and how much help [she] need[s] from [her] family, teachers, and others."  *Id.*  To this end, SSA considers how the claimant functions in six domains, or "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Each of these functional areas is addressed separately below.

(i)  Acquiring and Using Information

SSA considers "how well [the child] acquire[s] or learn[s] information, and how well [she] use[s] the information [she has] learned."  20 C.F.R. § 416.926a(g).  Preschool children (ages 3 to 6 years) "should begin to learn and use the skills that will help [them] read and write and do arithmetic," such as rhyming words, matching letters, counting, sorting, painting, and using scissors.  20 C.F.R. § 416.926a(g)(1)(iii).  Examples of limitations in a child's ability to

11

acquire and use information include lack of understanding of words about space, size or time, and the inability to rhyme words. 20 C.F.R. § 416.926a(g)(3).

Plaintiff did not report, *see generally* Admin. R. at 113-20 (Function Report dated December 26, 2007), 131-40 (Function Report dated March 7, 2008), and the ALJ did not find, Admin. R. at 18, any limitation on Da'Moni's ability to acquire and use information.

(ii) Attending and Completing Tasks

SSA next considers "how well [the child is] able to focus and maintain [her] attention, and how well [she] begin[s], carr[ies] through, and finish[es] . . . activities, including the pace at which [she] perform[s] activities and the ease with which [she] change[s] them." 20 C.F.R. § 416.926a(h). A preschooler "should be able to pay attention when . . . spoken to directly, sustain attention to . . . play and learning activities, and concentrate on activities like putting puzzles together or completing art projects." 20 C.F.R. § 416.926a(h)(2)(iii). A child with limitations in this area may be easily distracted, slow to focus on an activity, easily frustrated with a task, or may require extra supervision. 20 C.F.R. § 416.926a(h)(3).

The record includes "no allegation or evidence of limitation in this domain," and, accordingly, the ALJ determined that Da'Moni had "no limitation in attending and completing tasks." Admin. R. at 19 (emphasis removed).

(iii) Interacting and Relating With Others

SSA considers "how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). By preschool age, a child "should be able to socialize with children as well as adults, . . . prefer playmates [her] own age and develop friendships with

children who are [her] age." 20 C.F.R. § 416.926a(i)(2)(ii). In addition, a child in this age range should be able to communicate her wishes or needs with gestures and by speaking words clearly enough to be understood by others. *Id.* A child with limitations in this area may avoid or withdraw from meeting new people, have trouble communicating, or have difficulty playing games or sports with rules. 20 C.F.R. § 416.926a(i)(3).

Although plaintiff testified that Da'Moni had "some behavioral problems," Admin. R. at 45, the ALJ found no evidence in the record, including school reports, to support this contention. Admin. R. at 20. He found that Da'Moni "ha[d] no limitation in interacting and relating with others." Admin. R. at 20 (emphasis removed).

(iv) Moving About and Manipulating Objects

The SSA considers a child's gross and fine motor skills, that is "how [she] move[s] [her] body from one place to another and how [she] move[s] and manipulate[s] things." 20 C.F.R. § 416.926a(j). Children of preschool age "should be able to walk and run with ease, . . . climb stairs and playground equipment, . . . and . . . play more independently," and also should "be showing increasing control of crayons, markers, . . . and should be able to cut with scissors independently and manipulate buttons and other fasteners." 20 C.F.R. § 416.926a(j)(1)(iii). Again, the record includes "no allegation or evidence of limitation in this domain," and, accordingly, the ALJ determined that Da'Moni had "no limitation in moving about and manipulating objects." Admin. R. at 21 (emphasis removed).

(v) Caring for Herself

SSA assesses "how well [the child] get[s her] physical and emotional wants and needs met in appropriate ways; how [she] copes with stress and changes in [her] environment; and whether [she] take[s] care of [her]own health, possessions, and living area." 20 C.F.R. §

13

416.926a(k). Generally, a preschool child "should want to take care of many of [her] physical needs by [her]self (e.g. putting on . . . shoes, getting a snack), and also want to try doing some things that [she] cannot do fully (e.g., tying . . . shoes, climbing on a chair to reach something up high, taking a bath)." 20 C.F.R. § 416.926a(k)(2)(iii). Further, the child "should . . . begin to understand how to control behaviors that are not good for [her] (e.g., crossing the street without an adult)." *Id.* Evidence before the ALJ "indicates that [Da'Moni] is independent in personal care," and, therefore, she "has no limitation in the ability to care for herself." Admin. R. at 22 (emphasis removed).

(vi) Health and Physical Well-Being

SSA considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the child's] functioning" that were not considered elsewhere in connection with a claimant's ability to care for herself. 20 C.F.R. § 416.926a(*l*). A physical disorder "may . . . make it difficult for [the child] to perform . . . activities independently or effectively," 20 C.F.R. § 416.926a(*l*)(1), or "medications . . . or treatments . . . may have physical effects that also limit [her] performance of activities." 20 C.F.R. § 416.926a(l)(2). If the child has an illness that is "chronic with stable symptoms, or episodic with periods of worsening and improvement," SSA considers how she "function[s] during periods of worsening and how often and for how long these periods occur." 20 C.F.R. § 416.926a(*l*)(3).

The ALJ found evidence showing that Da'Moni "does have some limitations with respect to residuals of her chronic liver disease." Admin. R. at 23. "Her health is strictly monitored by a specialist [and she] takes medication regularly." *Id.* Although "[s]he is somewhat restricted in physical activity," she participates in activities appropriate for her age, including attending kindergarten. *Id.* Noting Da'Moni's stable condition and normal height and weight, the ALJ

14

determined that "her limitations in this domain are less than marked." *Id.* Because Da'Moni "does not have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning," she has not been disabled since the date of the application for SSI benefits. *Id.*

### III. CONCLUSION

Having reviewed the administrative record, the parties' cross-motions and oppositions thereto, the Court concludes that the SSA's decision is supported by substantial evidence. Accordingly, defendant's motion for summary affirmance will be granted and plaintiff's motion for judgment of reversal will be denied. An Order is issued separately.

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

DATE: August 29, 2011